UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMELIA SAPPHIRE, | CASE NO. 2:24-cv-32 |
| Plaintiff, | ORDER |
| v. | |
| FRED MEYER STORES INC., | |
| Defendant. | |

## 1. INTRODUCTION

This matter comes before the Court on Plaintiff Amelia Sapphire's motion to remand this case to King County Superior Court. Dkt. No. 10. Sapphire also seeks attorney fees and costs and Rule 11 sanctions against Defendant Fred Meyer Stores, Inc.'s attorneys. *Id.* Having considered the briefing, the record, and the law, and being otherwise fully informed, the Court GRANTS in part and DENIES in part Sapphire's motion.

## 2. BACKGROUND

In November 2022, Sapphire filed this putative class action in King County Superior Court, alleging that Fred Meyer "activated a new payroll system . . . that

ORDER - 1

caused widespread pay issues . . . in violation of Washington wage laws." Dkt. No. 1-1 ¶ 1. These issues include missing or late paychecks, canceled direct deposits, incorrect payment of wages, incorrect recording of hours worked, and incorrect deductions and withholding from wages. *Id.* ¶ 16. The proposed class is "[a]ll individuals who are or have been employed by Fred Meyer in the State of Washington at any time since the activation of the new payroll system . . . ." *Id.* ¶ 8. The complaint demands compensatory and exemplary damages, attorney fees and costs, and pre- and post-judgment interest. *Id.* ¶ 37. Because Fred Meyer allegedly acted "willfully and with intent," the complaint asserts liability under RCW 49.52.070 for "twice the amount of wages withheld" (i.e., double damages). *Id.* ¶ 33. The complaint does not specify a damages amount. *Id.*

In December 2022, Fred Meyer timely removed the case to the U.S. District Court for the Western District of Washington, arguing that the Class Action Fairness Act (CAFA) provided federal jurisdiction. *Sapphire v. Fred Meyer Stores., Inc.,* No. 22-cv-1795-JCC (W.D. Wash.) (*Sapphire I*). One day later, Sapphire moved to remand, arguing that Fred Meyer failed to establish an amount in controversy over CAFA's required threshold of $5,000,000. *Sapphire I,* Dkt. No. 8.

Judge Coughenour granted the motion in part, finding that Fred Meyer's claims about the amount in controversy were too speculative. *Sapphire I*, Dkt. No. 20. Fred Meyer based its amount-in-controversy calculation on an assertion that the "average impact per employee" was roughly $200. *Id.* at 3. Fred Meyer derived this figure from data aggregating "off-cycle" payments—i.e., payments made outside normal pay period dates. *Id.* Fred Meyer argued that, based on this figure, it easily

ORDER - 2

met CAFA's amount-in-controversy requirement given the estimated class size. *Id.* Judge Coughenour found, however, that while the off-cycle data *"could* support a finding that the average [under-]payment was over $200, it could just as likely have no correlation to the actual payroll issues" in dispute. *Id.* (emphasis in original). Without establishing any connection between the off-cycle payments and the alleged class damages, Fred Meyer failed to prove by a preponderance of the evidence that CAFA's amount-in-controversy requirement had been satisfied. *Id.* The Clerk of the Court remanded the case on March 14, 2024. *Sapphire I,* Dkt. No. 21.

Shortly after remand, Sapphire moved for class certification. King County Superior Court Judge David Whedbee denied the motion because the "proposed… class… does not set forth unlawful conduct that necessarily applies to all class members." Dkt. No. 9-1 at 412. Judge Whedbee explained: "A malfunctioning payroll system is not a liability on its own, even if when used it might result in miscalculations, for instance as to the 1,658 employees who have raised concerns about errors thus far. Assuming there are over 25,000 affected employees, that means over 23,000 employees may have been correctly paid (or overpaid)." *Id.* at 412-13.

In other words, the same missing causal data that rendered Fred Meyer's amount-in-controversy argument too speculative to establish CAFA jurisdiction also rendered the proposed class too broad to establish predomination. Judge Whedbee therefore denied class certification without prejudice and ordered class-wide discovery so that Sapphire could analyze the payroll data and thereby narrow the

ORDER - 3

proposed class's scope to include only those who were actually underpaid due to the payroll transition. *Id.* at 413-14.

In the ensuing discovery, Fred Meyer produced the following information: (i) hours worked and timekeeping data for the entire proposed class; (ii) payroll reports for the entire proposed class; (iii) all payroll-related complaints by employees; (iv) reports of all retroactive payments to employees, including on-cycle and off-cycle payments; (v) deductions data; and (vi) spreadsheets of additional hardship payments to employees. Dkt. No. 12 ¶ 5. These disclosures, however, still did not clarify the reasons for the on- and off-cycle payments. Dkt. No. 10-2 at 2-3.

The parties agreed to mediate on December 14, 2023. *Id.* at 3. Beforehand, they entered an agreement, which included a provision that "all information provided in conjunction with WAMS [Washington Arbitration & Mediation Service] mediation sessions is privileged and confidential and neither subject to discovery nor admissible as evidence in a proceeding unless waived or precluded by RCW 7.07.040." Dkt. No. 10-1 at 2.

In preparation for the mediation, Sapphire's counsel prepared a document entitled "Plaintiff's Confidential Mediation Brief" ("Mediation Brief") laying out their position on Fred Meyer's liability and exposure. *See* Dkt. No. 12-1 at 13-22. The Mediation Brief was meant for the mediator only. Dkt. No. 10-1 at 2. But two days before mediation, Fred Meyer's counsel emailed Sapphire's counsel requesting a copy of the Mediation Brief, and Sapphire's counsel complied. *Id.*

The Mediation Brief stated that Sapphire had "calculated exemplary damages, interest, and attorney fees as amounting to total liability of $10,234,333,"

ORDER - 4

referring to this as "a conservative calculation." Dkt. No. 12-1 at 21. But in his declaration explaining how he derived this figure, Sapphire's attorney states that—in line with his general strategy of starting negotiations with an "extreme opening figure" to "'anchor' in the mind of the opposing party"—he selected an "inflated figure" that was not "a reasonable reflection of the amount in dispute." Dkt. No. 10-1 at 2. He adds that the figure was "derived, at least in part, from pay data Judge Coughenour previously rejected in his order on remand as not necessarily indicative of pay errors caused by the new system." *Id.* at 3.

The mediation failed. Subsequently, Sapphire renewed her request for data showing the reason(s) why each of the off-cycle payments were made. Dkt. No. 10-2 at 32. Following at least two meet and confers, Fred Meyer acknowledged that "there isn't a separate data field in Kroger/Fred Meyer's payroll system listing the underlying reason for an off cycle/retro payment from which a single report or spreadsheet can be generated for the entire putative class." *Id.* at 28.

Fred Meyer again filed for removal, citing Sapphire's Mediation Brief as new evidence establishing an amount in controversy over $5,000,000. Dkt. No. 1 ¶ 18.

### 3.  DISCUSSION

Sapphire offers four arguments in favor of remand. First, Sapphire argues that Fred Meyer, as before, has failed to satisfy the amount-in-controversy requirement for CAFA jurisdiction. Dkt. No. 10 at 9-11. Second, Sapphire argues that Fred Meyer has violated the rule that a second removal, following a prior remand, must be based on newly discovered facts or law. *Id.* at 5-8. Third, Sapphire argues that the Mediation Brief does not qualify, under 28 U.S.C. § 1446(b)(3), as an

ORDER - 5

"other paper from which it may first be ascertained that the case is… removable." *Id*. at 8-9. Fourth, Sapphire argues that the rules of evidence bar consideration of the Mediation Brief to establish removability. *Id*. at 11-13.

The contours of the latter issues raised by Sapphire are far from clear, as they present difficult questions about the interplay between the general removal statute, CAFA, comity between federal and state courts, and the federal common-law mediation privilege. The Court need not decide them, however, to resolve the pending motion. Instead, the Court assumes without deciding that it may consider Fred Meyer's second removal and the Mediation Brief, in favor of simply addressing whether Fred Meyer has shown beyond mere conjecture that the amount-in-controversy requirement has been met. Because Fred Meyer offers more of the same speculation that Judge Coughenour previously rejected, the Court finds that the requirement has not been met and remands the case for continued proceedings in state court.

**3.1    Legal standard.**

Under CAFA, federal courts have original jurisdiction over class actions involving (1) at least 100 class members, (2) diversity of citizenship between the defendant and at least one member of the class, and (3) an amount in controversy exceeding $5,000,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(5)(b). Here, the only requirement at issue is the amount in controversy.

A proponent of removal bears the burden of establishing that jurisdictional requirements are satisfied. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 682-

ORDER - 6

686 (9th Cir. 2006). This is true even where CAFA provides the basis for removal. *Id.* In its notice of removal, a defendant need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. *Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). "The amount in controversy considers the amount in dispute, not that amount that a plaintiff is likely to recover." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). But when the plaintiff challenges the amount claimed by the defendant, both sides must submit proof, and the Court must determine whether the defendant has met its burden of establishing the amount in controversy by a preponderance of the evidence. *Cherokee Basin*, 574 U.S. at 88.

"[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Instead, there "must be some reasonable ground underlying" the defendant's claim, *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) (quoting *Ibarra,* 775 F.3d at 1199), in the form of "affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal,'" *Ibarra*, 775 F.3d at 1197 (9th Cir. 2015) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir.1997)).

### 3.2 The Court finds that Fred Meyer has failed to satisfy the $5,000,000 amount-in-controversy requirement for CAFA jurisdiction.

Fred Meyer's argument that the CAFA amount in controversy is met rests on Sapphire's Mediation Brief. To be sure, "[a] settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the

ORDER - 7

plaintiff's claim." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002). But "[a] plaintiff's damage estimate will not establish the amount in controversy … if it appears to be only a 'bold optimistic prediction.'" *Romsa v. IKEA U.S. W., Inc.*, No. CV 14-05552 MMM (JEMx), 2014 WL 4273265, at *2 (C.D. Cal Aug 28, 2014). Likewise, "where a plaintiff takes steps to disavow a damages estimate, the estimate, standing alone, is insufficient to show that the requisite amount has been met." *Vitale v. Celadon Trucking Servs., Inc.*, No. CV16-8535 PSG (GJSX), 2017 WL 626356, at *3 (C.D. Cal. Feb. 15, 2017) (collecting cases); *see Cohn,* 281 F.3d at 840 ("Cohn could have argued that the demand was inflated . . . but he made no attempt to disavow his letter or offer contrary evidence.").

*Vitale* is instructive. There, the plaintiff filed a wage-and-hour class action in state court. *Vitale*, 2017 WL 626356, at *1. The defendant removed the case under CAFA, but the district court granted the plaintiff's motion for remand because the defendant failed to show that the CAFA amount-in-controversy requirement was met. *Id.* Following remand, the parties mediated the case, and the plaintiff shared portions of his mediation brief with the defendant estimating class damages up to $22 million. *Id.* The defendant removed the case once again, citing the plaintiff's mediation brief as evidence. *Id.* at *2. The plaintiff moved to remand and disavowed the damages estimate in his mediation brief, arguing it was intended for discussion purposes only and did not reflect a reasonable damages estimate. *Id.* at *4. The plaintiff also claimed that some of the figures stated were "a complete shot in the dark" and a "blind guess" given that the defendant had not produced certain requested data about the pay practices at issue. *Id.* The plaintiff also submitted new

calculations to the court reflecting damages of less than $4 million. *Id.* In granting the motion for remand, the court found that the mediation brief did not represent a reasonable estimate of the plaintiff's damages "[i]n light of Plaintiff's disavowal of the damages estimate in its mediation brief, reduction of or disavowal of claims, and offer of a new calculation[.]" *Id.* And because the defendant presented no evidence beyond the plaintiff's mediation brief, the court held that the defendant failed to carry its burden of showing that the case met the CAFA jurisdictional minimum. *Id.*

Like the plaintiff in *Vitale,* Sapphire disavows the damages estimate in the Mediation Brief as a "bold and overly optimistic statement of Defendant's exposure to liability and damages"—an "extreme opening figure" intended to "'anchor' in the mind of the opposing party" for strategic negotiation purposes. Dkt. No. 10-1 at 2. Sapphire's counsel explains that he calculated the figure using a dramatically over-inclusive accounting of off-cycle and retroactive payments—despite knowing that some, many, or even most of those payments were "unrelated to the faulty payroll system." Dkt. No. 10-1 at 3. Sapphire, though counsel, claims that she made a "blind guess" about portions of her damages estimate based on incomplete data. *Id.* Moreover, the figure included "interest on amounts owed, an incentive award to Plaintiff, and litigation and settlement administration costs"—all of which were set at "inflated" values yet do not count towards the amount in controversy for jurisdictional purposes. *Id.*; *see* 28 U.S.C. §§ 1332(d)(2) ("exclusive of interest and costs"). Ultimately, Sapphire confesses that the "dollar figure in the Mediation Brief is not a reasonable estimate of the amount in controversy in this matter." Dkt. No. 10-1 at 1.

ORDER - 9

While the Court does not view Sapphire's disavowal as a get-out-of-federal-court-free card, it is relevant evidence in determining whether the Mediation Brief is a reasonable estimate of the amount in controversy. *Graybill v. Khudaverdian*, No. SACV 15-01627-CJC(JCGx), 2015 WL 7295378, at *4 (C.D. Cal. Nov. 17, 2015) ("[A] plaintiff's disavowal of a settlement demand or argument that such a demand was inflated is relevant [evidence] to the determination of whether a demand is a credible estimate of an amount in controversy."). Fred Meyer counters by trying to bolster the damages estimate in the Mediation Brief. But the quality of the estimate is constrained by the quality of the data from which it was derived.

Fred Meyer does not dispute that Sapphire, in computing her damages, lacked access to systematic causal data indicating the reasons why any given on- or off-cycle payment was issued. In its email to Plaintiff's counsel right before its latest removal effort, Fred Meyer's counsel stated that "there isn't a separate data field in Kroger/Fred Meyer's payroll system listing the underlying reason for an off cycle/retro payment from which a single report or spreadsheet can be generated for the entire putative class." Dkt. No. 10-2 at 28. Fred Meyer effectively concedes that causal data has not been forthcoming. *See* Dkt. No. 11 at 17 ("Plaintiff accuses Defendant of withholding data that it *does not have*.") (emphasis in original). Thus, the same infirmity that Judge Coughenour diagnosed in his prior remand order—and that Judge Whedbee identified in his class-wide discovery order—persists. Merely knowing the aggregate amount of payroll payments, absent the *reason* for those payments, allows neither Sapphire nor this Court to plausibly calculate the amount in controversy.

ORDER - 10

Indeed, express statements by Fred Meyer and its own declarants undermine Fred Meyer's amount-in-controversy argument. In October 2023, Fred Meyer's human resources leader Tricia Halpin testified under oath that she believed only a "small number of employees" were affected by the payroll transition and that her earlier testimony about the scope of the issue was mistaken "because in the [off-cycle payment] data, there were duplications. . . . There were other issues listed not necessarily related to the [payroll] transition." Dkt. No. 10-2 at 14-16. Likewise, in a June 2023 declaration in opposition to class certification, Fred Meyer's Assistant Controller, Kayla Bartley, testified that—having "analyz[ed] time-and-attendance records and payroll data to identify employees with negative variances between… hours worked and paid amounts"—she had identified only "697 hourly, non-exempt employees in the State of Washington with such a negative variance." Dkt. No. 9-1 at 341-343. She continued: "Not all payroll discrepancies since September 2022 have been caused by the implementation of the new… payroll system," going on to explain numerous other reasons for off-cycle payments. *Id.* And most damningly, Fred Meyer itself writes in its opposition brief that "a retroactive payment could be related to the new payroll system, but it could also be the result of the employee failing to clock in/out properly; the ratification of a union contract backdating pay rate increases to a prior date; recalculation of an employee's overtime rate following a mid-year bonus; incorrect W-4 information from the employee; or simple human error." Dkt. No. 11 at 16. Given this admission, the Court finds no reason to assume that the payroll data on which Sapphire based the Mediation Brief allowed for a reasonable calculation of damages.

In sum—given the parties' strategic posture during mediation, the deficiency of the data from which the Mediation Brief was developed, and Sapphire's disavowal—the Court finds that the figure set forth in the Mediation Brief is not a "reasonable estimate of the plaintiff's claim." *See Cohn*, 281 F.3d at 840. And because Fred Meyer presents no other evidence about amount in controversy, the Court FINDS that Fred Meyer has failed to prove by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold. This finding is sufficient to grant Sapphire's request to remand.

### 3.3 The Court awards Sapphire her reasonable attorneys' fees and costs incurred because of Fred Meyer's second removal.

"An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C.A. § 1447. The Supreme Court offers the following guidance on attorney fees under § 1447:

> Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case. For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees. When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be "faithful to the purposes" of awarding fees under § 1447(c).

*Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

In the previous order remanding this case, Judge Coughenour denied Sapphire's request for attorney fees, finding that "Defendant believes there is a large number of impacted employees" and therefore "Defendant's basis for removal was not unreasonable." Dkt. No. 10-2 at 10. Since then, in its opposition to class certification, Fred Meyer apparently reversed its position on the number of impacted employees, emphasizing that "not all employees were negatively impacted" and clarifying that retroactive payments did not necessarily correlate with payroll errors. Dkt. No. 9-1 at 280. Now, in the instant removal effort, Fred Meyer reverses course yet again, arguing that the retroactive pay data underlying the Mediation Brief is in fact indicative of the amount in controversy. Fred Meyer not only raises arguments already rejected in its previous removal attempt; worse, it runs rough-shod over the confidentiality provision in the mediation contract.[1] The net effect of these tactics is unnecessary expenditure of court resources, frustration of settlement efforts, and a delay of adjudication.[2]

Given that its present attempt at removal exhibits the same defects as its prior attempt, the Court concludes that Fred Meyer lacks an objectively reasonable basis for seeking removal. Further, even if it were "objectively reasonable" to rely on the Mediation Brief to establish the amount in controversy, Fred Meyer's

---

[1] While there is some question about whether a mediation privilege exists under these circumstances, there is no dispute that the parties agreed to keep "all information" provided during the mediation "privileged and confidential," and that such information was not to be used as evidence in court proceedings unless waived or precluded under state law. Dkt. No. 10-1 at 2. This agreement between the parties should have meant something.

[2] Prior to removal, this case was set to go to trial in King County Superior Court on March 18, 2024. Dkt. No. 10-2 at 4.

apparently brazen breach of the confidentiality agreement represents an "unusual circumstance" meriting redress. *See Martin*, 546 U.S. at 141. Therefore, this Court GRANTS Sapphire's request for reasonable attorneys' fees and costs.

Sapphire must submit her petition for reasonable attorneys' fees and costs by no later than 14 days from the date of this Order.

**3.4   The Court declines to issue Rule 11 sanctions against Fred Meyer.**

Sapphire asks the Court to impose Rule 11 sanctions sua sponte against Fred Meyer. *See* Fed. R. Civ. P. 11(c)(3) (authorizing court, on its own, to order attorney or party to show cause why conduct has not violated Rule 11(b)). The Court finds that awarding fees and costs, *see supra* § 3.2, is sufficient to do justice in this case. The Court denies the invitation to impose Rule 11 sanctions.

## 4.  ORDER

In sum, the Court GRANTS the motion to remand, GRANTS the motion for attorney fees and costs, and DENIES the request for Rule 11 sanctions. The Clerk is DIRECTED to remand this case to King County Superior Court.

Sapphire must submit her petition for reasonable attorneys' fees and costs by no later than 14 days from the date of this Order.

It is so ORDERED.

Dated this 27th day of September, 2024.

Jamal N. Whitehead
United States District Judge

ORDER - 14